Filed 6/29/15  P. v. Reyes CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049842 |
| v. | (Super. Ct. No. 05WF3659) |
| JUAN MANUEL REYES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Frank Fasel, Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed as modified.

Marilee Marshall & Associates and Marilee Marshall for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Heather F. Crawford, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Juan Manuel Reyes, a juvenile offender, was convicted of special circumstances murder and other crimes for participating in a fight that led to the death of a rival gang member. He contends instructional error compels reversal, and his prison sentence of 50 years to life is cruel and unusual. We agree Reyes' sentence violates Eighth Amendment tenets respecting the punishment of minors and will modify his sentence to ensure he receives a parole hearing after 25 years in prison. In all other respects, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

This is Reyes' third appeal. A detailed factual account of his crimes is set forth in *People v. Reyes* (June 27, 2013 G039743) [nonpub. opn.] and *People v. Guerrero, et al.* (Mar. 16, 2010 G039743) [nonpub. opn.], which we incorporate by reference. Those opinions reflect that, in December 2005, when Reyes was 17 years old, he "hit up" rival gang member Abraham Ortega at their high school. During the encounter, heated words were exchanged, but due to the intervention of campus security, nothing further transpired at that time. Five days later, a large fistfight erupted at the school between the two gangs. While Reyes was embroiled in the brawl, his fellow gang member Jesus Guerrero pulled out a gun and began shooting at their enemies. One of the shots struck and killed Ortega, who was 16 years old.

Charged with aiding and abetting the shooting, Reyes was convicted of first degree murder, three counts of attempted premeditated murder and other crimes. The jury also found true the special circumstances allegation that, in assisting the murder, Reyes specifically intended to kill Ortega to further the activities of his gang. And it determined Reyes vicariously discharged a firearm resulting in death. Given the true finding on the special circumstances allegation, the trial court sentenced Reyes to life in prison without the possibility of parole (LWOP) on the murder count. It added three life terms for the attempted murders and tacked on another 85 years to life for the remaining crimes and enhancements.

2

On appeal, Reyes argued his sentence was cruel and unusual under the rules set forth in *Graham v. Florida* (2010) 560 U.S 48 (*Graham*), *Miller v. Alabama* (2012) 567 U.S. __ [132 S.Ct. 2455] (*Miller*) and *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), which postdated his sentencing and changed the legal landscape respecting the punishment of juvenile offenders.  Those opinions established that before imposing a severe penalty on a juvenile offender, the court must consider how children are different from adults and how those differences generally militate against a sentence of LWOP. Although LWOP may be justified in some limited circumstances, that punishment must be reserved for "'the rare juvenile offender whose crime reflects irreparable corruption.'" (*Miller, supra*, 132 S.Ct. at p. 2469, quoting *Roper v. Simmons* (2005) 543 U.S. 551, 573.)  Because the trial court did not have the guidance of those opinions at the time it sentenced Reyes, we remanded the matter for a new sentencing hearing.  (*People v. Reyes, supra*, G039743 at pp. 9-14.)

On resentencing, the trial court determined Reyes was not deserving of LWOP.  However, it sentenced him to 25 years to life for the murder, plus 25 years to life for the firearm enhancement.[1]  That means Reyes will have to spend 50 years in prison – until he is about 67 years old – before he will be eligible for parole.

DISCUSSION

*Sentencing*

Reyes contends his 50-year-to-life sentence is unconstitutional because it is the functional equivalent of LWOP.  We agree.  In order to comport with the Eighth Amendment, we will modify his sentence to ensure he receives a parole hearing after serving 25 years in prison, as required under the Penal Code.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments."  (See also Cal. Const., art. I, § 17 [proscribing the infliction of

---

[1]     On the remaining counts and enhancements, the trial court either stayed sentence or imposed concurrent terms.

3

cruel or unusual punishment].)  In *Graham*, the high court ruled this provision prohibits LWOP for juvenile nonhomicide offenders.  (*Graham, supra*, 560 U.S. at pp. 74-79.) That decision was followed up by *Miller*, which prohibits mandatory LWOP for juvenile homicide offenders (*Miller, supra*, 132 S.Ct. at pp. 2469, 2474) and *Caballero*, which prohibits de facto LWOP for juvenile nonhomicide offenders (*Caballero, supra*, 55 Cal.4th at p. 268.)  The underlying rationale of these decisions is that "[b]ecause juveniles have diminished culpability and greater prospects for reform," as compared to adult offenders, "'they are less deserving of the most severe punishments.'  [Citation.]" (*Miller, supra,* 132 S.Ct. at p. 2464.)

The Attorney General does not dispute that, from a practical standpoint, the length of Reyes' sentence is functionally equivalent to LWOP.  Indeed, there can be little question that Reye's sentence, which requires him to spend at least 50 years in prison before he is even *eligible* for parole, violates a core teaching of the above decisions, which is that, except in the rarest of cases, juvenile offenders must be given a meaningful opportunity to obtain release during their expected lifetime based on demonstrated maturity and rehabilitation.  (*Graham, supra*, 560 U.S. at p. 75; *Caballero, supra*, 55 Cal.4th at pp. 267-268.)  While the Attorney General attempts to distinguish *Graham* and *Caballero* on the grounds they involved nonhomicide offenders, our Supreme Court has recently determined the rationale of those cases, as well as *Miller*, applies equally to juvenile offenders such as Reyes who are convicted of special circumstances murder. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1380-1381 (*Gutierrez*).)[2]

The Attorney General also argues Reyes' Eighth Amendment claim is moot in light of Penal Code section 3051.[3]  That section entitles Reyes to a parole hearing during the 25th year of his incarceration.  (Pen. Code, § 3051, subd. (b)(3).)  However, in

---

[2]      In light of these cases, *Gutierrez* held it would violate the Eight Amendment to construe Penal Code section 190.5, subdivision (b) as creating a presumption in favor of LWOP for juvenile killers.

[3]      Similar claims are currently pending in the California Supreme Court.  (See, e.g., *In re Alatriste* (2013) 220 Cal.App.4th 1232, review granted Feb. 19, 2014, S214652.)

*Gutierrez*, the California Supreme Court expressed doubt that a statutory scheme that acts as a potential "after-the-fact corrective" by allowing relief from an LWOP sentence in the *future* can remedy a sentence that runs afoul of *Graham*, *Miller* or *Caballero*. (*Gutierrez, supra*, 58 Cal.4th at p. 1386.) Because Penal Code section 3051 does nothing to alleviate the cruelty of Reyes' sentence *as it presently stands*, we do not believe his constitutional challenge is moot. Rather, he is entitled to have his sentence modified to comport with the Eighth Amendment. Because the trial judge determined Reyes is reformable, and because Penal Code section 3051 affords Reyes the opportunity for a parole hearing 25 years into his prison sentence, we will modify his sentence to include a minimum parole eligibility period of 25 years.

*The Aiding and Abetting Instructions*

Relying on another case that was decided after he was tried – *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*) – Reyes contends his murder conviction must be reduced from first to second degree, due to instructional error. Although instructional error did occur, we believe it was harmless under the circumstances presented in this case.

At trial, the prosecution argued Reyes was vicariously liable for first degree murder under two theories of culpability. First, he directly aided and abetted Guerrero in committing that crime, and second, he aided and abetted the "target offense" of assault, battery or disturbing the peace, the natural and probable consequences of which was murder. The trial court instructed the jury on both of these theories.

As the law stood at the time of Reyes' trial, those instructions were legally correct. However, in *Chiu*, the California Supreme Court departed from precedent and determined a defendant cannot be found guilty of first degree murder under the natural and probable consequences doctrine. The court reasoned "the connection between the defendant's culpability and the perpetrator's premeditative state is too attenuated to

5

impose aider and abettor liability for first degree murder under" that doctrine. (*Chiu, supra*, 59 Cal.4th at p. 166.)

Nevertheless, "[a]iders and abettors may still be convicted of first degree premeditated murder based on direct aiding and abetting principles. [Citation.] Under those principles, the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission. [Citation.]" (*Chiu, supra*, 59 Cal.4th at p. 166-167.)

Therefore, we must examine the record to determine whether it sheds any light on which theory of culpability the jury relied on in finding Reyes guilty. Reyes' "first degree murder conviction must be reversed unless we conclude beyond a reasonable doubt that the jury based its verdict on the legally valid theory that [he] directly aided and abetted the premeditated murder[,]" as opposed to the invalid natural and probable consequences theory. (*Chiu, supra*, 59 Cal.4th at p. 167.)

In *Chiu*, the trial court questioned several jurors after receiving a note the jury was deadlocked on the degree of the defendant's murder. Because the jurors' responses indicated they were focusing on the natural and probable consequences theory, the Supreme Court was unable to conclude the instructional error was harmless in that case. (*Chiu, supra*, 59 Cal.4th at pp. 167-168.)

Here, in contrast, there was no conversation between the court and the jurors during deliberations. Nonetheless, the jury's verdict, in and of itself, is very telling in terms of how it perceived Reyes' culpability. In finding the special circumstances allegation true, the jury not only determined Reyes assisted the murder to further the activities of his gang, but that he did so *with the specific intent to kill*. (Pen. Code, § 190.2, subd. (a)(22); *People v. Reyes, supra,* G039743 at pp. 5-7.) This finding is significant for two reasons. First, it proves there was a closer connection between Reyes' mental state and the mens rea required for first degree murder than if his liability were

6

predicated on the natural and probable consequences doctrine. Whereas liability under that doctrine only required Reyes to have the intent to assault, batter or disturb the peace, the jury's finding shows Reyes' intent transcended that level and was commensurate with that of the perpetrator, Guerrero.

Second, on a more practical level, the jurors' finding Reyes intended to kill means they did not have to rely on the natural and probable consequences theory to convict him of first degree premeditated murder. In fact, had the jurors relied on that theory, thereby premising Reyes' liability on the intent to assault, batter or disturb the peace, it is doubtful they would have returned a true finding on the special circumstances allegation. But they did, which shows they believed Reyes' mental state was roughly on par with Guerrero's. Although the intent to kill is not equivalent to premeditation (*Chiu, supra*, 59 Cal.4th at p. 166), the jury's true finding on the special circumstances shows it believed Reyes was out to help his fellow gang members kill Ortega, a belief which is amply supported by the evidence. Indeed, the record shows 1) Reyes and Ortega's gangs were longstanding rivals, 2) Reyes precipitated the shooting by "hitting-up" Ortega at their school five days earlier, 3) Reyes was involved in instigating and participating in the fistfight that took place immediately before the shooting, and 4) Reyes was right in the mix of the battle when his fellow gang member Guerrero pulled out a gun and started shooting at Ortega's group. Given these factual circumstances, it is exceedingly unlikely the jury relied on the natural and probable consequences doctrine in convicting Reyes of first degree murder.

Instead, the much more logical conclusion to be drawn from the jurors' verdict – and the one we are convinced it did in fact draw – is that they convicted Reyes of first degree murder based on the theory he directly aided and abetted Guerrero. Therefore, the error in instructing on the natural and probable consequences doctrine in connection with that charge was harmless. (Cf. *People v. Vega-Robles* (2015) 236 Cal.App.4th 554 [given the strength of the evidence that defendant committed first degree

7

felony murder, the instructional error in allowing the jury to convict him of first degree murder under the natural and probable consequences doctrine was harmless beyond a reasonable doubt].)[4]

## DISPOSITION

Reyes's sentence is modified to reflect he shall be entitled to a parole hearing after serving 25 years in prison. The clerk of the trial court is directed to prepare a new abstract of judgment with this modification and to send a certified copy thereof to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

BEDSWORTH, J.

I CONCUR:


O'LEARY, P. J.

---

[4] Reyes also contends his convictions for *attempted* premeditated murder must be reversed under the reasoning of *Chiu*. However, he admits that contention is contrary to the holding in *People v. Favor* (2012) 54 Cal.4th 868, which the California Supreme Court distinguished and left undisturbed in *Chiu* (*Chiu, supra*, 59 Cal.4th at pp. 162-163) and which is binding on us under principles of stare decisis (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450).

Aronson, J., concurring:

I have no objection to modifying defendant's sentence to reflect that he is entitled to an early parole hearing or to directing the trial court to modify the abstract of judgment accordingly. But in my view, neither modification is necessary, particularly since defendant was resentenced in February 2014, *after* the January 1, 2014, effective date of Senate Bill No. 260 (2013-2014 Reg. Sess., ch. 312, § 4; codified at Pen. Code, § 3051 et seq.; all further statutory references are to this code). Based on this resentencing date, the sentence the trial court imposed did not subject him to an unconstitutional de facto term of life in prison without the possibility of parole (LWOP), and therefore there is no need to modify the judgment.

I write separately to explain that I continue to believe the passage of Senate Bill No. 260 moots a juvenile defendant's constitutional challenge to a lengthy sentence where, as here, the early parole date specified in Senate Bill No. 260 means a juvenile offender does not face a de facto LWOP term. Simply put, apart from a death sentence or actual LWOP term, the sentence a trial court imposes is not effective to deny parole to an adult or juvenile offender; rather, the minimum term of confinement is determined by reference to the statute governing parole eligibility (§ 3046). Consequently, we ordinarily do not modify a sentence or abstract of judgment to reflect a parole eligibility date because the trial court does not set the date.

For both juveniles and adults, the Legislature has divided sentencing and parole eligibility determinations into two distinct phases. The sentencing court decides the former, and the Legislature has reserved the latter for itself under the general parole eligibility statute, section 3046. Thus, when a trial court imposes an indeterminate "life sentence," the defendant does not necessarily remain in prison for life as the literal wording of the sentence suggests, but rather is eligible by statute for parole after seven years. (§ 3046, subd. (a)(1).) Under section 3046, subdivision (a)(2), however, a specific "provision of law" may govern a defendant's parole eligibility. For example, when the

1

trial court imposes a sentence of 25 years to life for murder (§ 190, subd. (a)), the specification of "25 years to life" in section 190, subdivision (a), is an "other provision of law" within the meaning of the parole eligibility statute (§ 3046, subd. (a)(2)) that results in a defendant serving a minimum of 25 years before he or she is eligible for parole. In the same vein, the parole eligibility statute specifies that when the trial court imposes consecutive sentences that *each* include a minimum period before parole, the defendant ordinarily must serve *both* periods before gaining parole eligibility. (§ 3046, subd. (b).)[1]

The parole eligibility statute not only incorporates Senate Bill No. 260's new juvenile offender early parole hearing dates *implicitly* under its "any other provision of law" language (§ 3046, subd. (a)(2)), but also explicitly. Specifically, the parole eligibility statute expressly states in section 3046, subdivision (c), that "a prisoner found suitable for parole pursuant to a youth offender parole hearing as described in Section 3051 shall be paroled . . . ." Section 3051, subdivision (b)(3), provides that a juvenile offender "shall be eligible for release on parole" no later than "his or her 25th year of incarceration . . . ." Accordingly, at no time since defendant's resentencing has he been subject to an unconstitutional de facto juvenile LWOP term. Rather, the terms of his new sentence entitle him to an initial parole hearing after 24 years (§ 3051, subd. (b)(3)), and to regular parole hearings thereafter (*id.*, subd. (g)).

Consequently, I see no constitutional dimension to this case. Defendant's original sentence improperly subjected him to a mandatory LWOP term (contra *Miller v.*

---

[1] In full, section 3046, subdivisions (a) and (b) provide: "(a) No prisoner imprisoned under a life sentence may be paroled until he or she has served the greater of the following: [¶] (1) A term of at least seven calendar years. [¶] (2) A term as established pursuant to *any other provision of law* that establishes a minimum term or minimum period of confinement under a life sentence before eligibility for parole. [¶] (b) If two or more life sentences are ordered to run consecutively to each other pursuant to Section 669, no prisoner so imprisoned may be paroled until he or she has served the term specified in subdivision (a) *on each of the life sentences* that are ordered to run consecutively." (Italics added.)

*Alabama* (2012) __ U.S. __, 132 S.Ct. 2455 (*Miller*)), but his new sentence is neither mandatory, nor does it subject him to an LWOP term (see *Graham v. Florida* (2010) 560 U.S. 48), nor even a de facto LWOP (see *People v. Caballero* (2012) 55 Cal.4th 262).

The California Supreme Court's recent opinion in *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*) also has no bearing on this case. *Gutierrez* eliminated the mandatory LWOP presumption in section 190.5, but we already had reversed the initial mandatory LWOP in this case under *Miller* and remanded for resentencing. Statements in *Gutierrez* concerning a new sentence recall option in section 1170 are not pertinent to our case. The recall option is a wholly separate and distinct alternative for juvenile life-term inmates that predated Senate Bill No. 260's new categorical parole-eligibility dates in section 3051. *Gutierrez* did not address Senate Bill No. 260.

The criticism the Supreme Court levied in *Gutierrez* against the recall option as an inadequate "after-the-fact-corrective" (58 Cal.4th at p. 1386) does not apply to Senate Bill No. 260. The high court rejected the Attorney General's argument in *Gutierrez* that the recall option meant a mandatory sentence under section 190.5 was "'no longer effectively a sentence of life without the possibility of parole.'" (*Gutierrez*, at p. 1386.) As the court explained, "A sentence of life without parole under section 190.5(b) remains *fully effective* after the enactment of section 1170(d)(2). That is why section 1170(d)(2) sets forth a scheme for *recalling* the sentence and *resentencing* the defendant." (*Ibid.*) In other words, the fact that a sentence must be "'*changed*'" under the recall procedure demonstrates it is still effective, and potentially constitutionally infirm, until it is changed. (*Ibid.*)

Here, unlike in *Gutierrez,* the trial court's sentence is *not* "effective" to preclude a parole hearing for defendant absent a "change" in his sentence. To the contrary, under the terms of section 3051, it is the trial court's imposition of a 25-years-to-life sentence that triggers a parole hearing for a juvenile after 24 years of incarceration.

(§ 3051, subd. (b)(3).)  Accordingly, we need not modify defendant's sentence any more than we would do so for a juvenile subjected to an indeterminate term of "life" behind bars.  As in a "life" sentence with a statutory parole eligibility date after seven years, the sentence imposed on defendant carries with it by statute a parole eligibility date well within his natural life span.  In my view, it is speculative to suppose the Legislature will change some aspects but not others of the parole-eligibility statute, for instance, by repealing juvenile-offender parole hearings, but not also modifying the effect consecutive sentences have on parole eligibility.

Therefore, I would not modify the trial court's sentencing order or the abstract of judgment to specify a parole hearing date.  The Department of Corrections and Rehabilitation is charged with the statutory responsibility to make that calculation. (§ 3041.)  But I am aware of no statutory or constitutional command precluding the modification, and I therefore concur in the judgment.


ARONSON, J.